**Ivan Ned FOSTER, Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Appellee.**

No. 85–1252.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 10, 1985.

Decided Jan. 7, 1986.

Philip A. Lehman (North State Legal Services, Graham, N.C. on brief) for appellant.

Cheryl Nikonovich-Kahn, Office of Gen. Counsel, Dept. of Health and Human Services, Washington, D.C. (Kenneth W. McAllister, U.S. Atty., Benjamin H. White, Jr.,

Asst. U.S. Atty., Greensboro, N.C. on brief), for appellee.

Before PHILLIPS and ERVIN, Circuit Judges, and McMILLAN, United States District Judge for the Western District of North Carolina, sitting by designation.

ERVIN, Circuit Judge:

Ivan Ned Foster appeals from a judgment of the district court affirming the Secretary's decision to deny Foster's application for Social Security disability insurance benefits. Finding that the Secretary improperly evaluated Foster's pain and erroneously disregarded the treating physician's testimony, we conclude that the Secretary's decision is not supported by substantial evidence. Accordingly, we reverse the district court's judgment.

I.

Foster filed an application for disability benefits on May 24, 1982. His claim was denied initially and upon reconsideration by the Social Security Administration. A hearing was subsequently held on March 14, 1983, before an Administrative Law Judge (ALJ).

At the hearing, Foster testified that he was born on August 26, 1937, had completed seven years of school, and could not read, write, or do simple arithmetic. His past work experience consisted of fifteen years of employment as a knitter and knitting machine fixer in a hosiery mill. This work involved a significant amount of lifting, climbing, bending, standing, and walking.

In 1964, Foster fell on some ice and broke his back. He was unable to work for about eleven months but recovered and returned to employment. In September, 1978, he fell down seven concrete steps and sustained another back injury. The injury has resulted in severe and continuing pain. Foster testified that he has not improved since the 1978 accident. He tried to return to work several times but was unable to work for more than three or four hours.

Foster described the pain as constant and like a "jumping toothache" from his lower back to his legs. The pain eases somewhat only when he takes prescribed pain medication and lies down. Most of his day is spent sitting, walking, and lying down for short intervals, because he is unable to remain in one position for long due to pain.[1] He wears a corset-type back brace at all times, even when sleeping, and cannot walk without a cane.

Foster is unable to perform even the most basic household chores. He cannot dust, sweep, mop, do laundry, go shopping, or do yard work. He requires his wife's assistance to put on his pants and shoes because he is unable to bend down.

Mrs. Foster corroborated her husband's testimony. She testified that his condition was getting worse and that some mornings he was virtually unable to get out of bed.

The medical evidence in the record consists of reports from Foster's treating and examining physicians.[2] In a letter dated February 8, 1982, Dr. James W. Hayes, an orthopedic surgeon and Foster's treating physician, stated that Foster's diagnosis was degenerative disc disease at L4 with superimposed strained ligaments of the lumbar spine. According to Dr. Hayes, the restrictions and limitations placed upon Foster were related to his low back pain and pain in the right lower extremity which precluded his lifting over five to ten pounds in weight and any significant bending of the back. In a subsequent letter dated May 7, 1982, Dr. Hayes expressed the opinion that Foster was totally disabled and could not do any type of work due to his low back pain and pain in the right lower extremity. On October 7, 1982, Dr. Hayes completed a Physical Capacities Evaluation

form in which he listed the following findings regarding Foster: able to sit one to two hours; able to stand and walk less than one hour; unable to push and pull; unable to bend, squat, crawl, or climb; spinal deformity present; motion in the lumbar spine $1/3$ normal; tenderness in the lumbar spine; straight leg raising to 45 degrees bilaterally caused increase in low back pain; and x-ray of the lumbar spine showed degenerative disc L4.

The record also reflects that Foster underwent evaluation on February 18, 1983, at the North Carolina Memorial Hospital Orthopedic Clinic. At the time of the examination Foster was wearing a back brace and had difficulty ambulating. He used a cane in his right hand and had trouble forward bending. There was diffuse tenderness in the low back which was not reproducible in terms of point of maximum tenderness. In addition, Foster exhibited tenderness which extended down onto and included the sacrum and distal sacrum. X-rays of the claimant's lumbosacral spine showed mild degenerative changes and disc narrowing at L3–4 and L4–5 without subluxation. Based upon the results of the physical examination and history, the medical assessment was mechanical low back pain. The examining physicians noted that actual evaluation of Foster with regard to disability would be more appropriate for the doctor who had been treating the patient since 1978.[3]

Foster returned to the North Carolina Memorial Hospital Orthopedic Clinic on May 17, 1983, for further evaluation. The doctors concluded that he had mechanical low back pain with evidence of degenerative disc disease. Examination showed dif-

---

1. Foster testified that he cannot stand or sit more than thirty to forty-five minutes and cannot walk more than one and a half blocks. At night, he cannot sleep or stay in bed for more than two hours at a time.

2. At issue in this appeal is Foster's medical status subsequent to January 29, 1982. The medical evidence prior to this date was considered under three applications Foster had made previous to the instant one on appeal. Those three applications were denied and Foster

was precluded by the statute of limitations from pursuing his judicial remedies. Thus, Foster's claims based on his medical condition between the 1978 accident and January 29, 1982, are not before this court. Accordingly, only medical evidence subsequent to January 29, 1982, will be considered.

3. Dr. Hayes is the only doctor who has continuously treated Foster since 1978.

fuse tenderness over the L3–4, L4–5, and L5–S1 spinous processes and interspinous ligaments. He had some facet tenderness and L4–5 in the 5–1 areas on the right and right sciatic notch tenderness. He had increased low back pain with forward bending which was limited and increased lumbar pain with extension and lateral bending which was limited to 30 degrees. Foster could toe walk and heel walk but did so in a jerking fashion swaying from right to left.

Based on the above evidence, the ALJ found that Foster was functionally illiterate, had not engaged in substantial gainful activity since 1978, suffered from a severe medically determinable impairment (degenerative disc disease), could not perform his past work, but could perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) (1983).[4] Considering his residual functional capacity, age, education, and work experience, the ALJ applied the medical vocational guidelines and concluded that Foster was not disabled. 20 C.F.R. Ch. III, App. 2, Rule 202.16 (1983). The Appeals Council denied Foster's request for review and the ALJ's decision became the Secretary's final determination.

Foster commenced an action for judicial review in the United States District Court for the Middle District of North Carolina. He filed a motion for summary judgment and the Secretary filed a cross motion for judgment on the pleadings. On November 16, 1984, the United States Magistrate issued findings and a recommendation that the administrative decision of the Secretary be upheld and that the case be dismissed. Foster filed objections to the Magistrate's findings, and on January 11, 1985, United States District Judge Frank W. Bullock entered an order affirming the Magistrate's findings and dismissing Foster's action. This appeal followed.

## II.

 The Secretary, having found Foster unable to perform his past work, has the burden of proving claimant's capacity to perform a wide range of light work. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir.1981). Foster asserts on appeal that the Secretary has failed to meet her burden. He reasons that upon a proper evaluation of his pain and consideration of Dr. Hayes' testimony, the record lacks substantial evidence to support the Secretary's finding. We agree.

 The first issue we must address is the evaluation of Foster's pain. This court has held that pain itself can be disabling, and it is incumbent on the ALJ to evaluate the effect of pain on a claimant's ability to function. *See Myers v. Califano*, 611 F.2d 980 (4th Cir.1980).

The standard for evaluating disabling pain was recently adopted by Congress in the Social Security Disability Benefits Reform Act of 1984. The standard reads:

An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a con-

---

**4.** The section states:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities....

20 C.F.R. 404.1567(b) (1983).

clusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C.A. § 423(d)(5)(A) (West Supp. 1985).

▰▰▰ The record shows that neither the ALJ[5] nor the district court properly applied the standard in evaluating Foster's pain. The ALJ summarily dismissed the evidence of pain as being of insufficient magnitude to preclude the performance of light work activity. Apparently, the ALJ found that the medical evidence did not prove the intensity of the pain Foster's testimony asserted.[6] The district court affirmed the ALJ's decision, reasoning that the treating physician failed to make a *specific* finding that Foster's physical condition would result in the *degree* of pain alleged. These holdings, requiring that there be a direct tie between objective medical findings and a specific level of pain, go beyond the pain standard.

The Disability Reform Act requires medical evidence of a condition that could reasonably produce pain, not objective evidence of the pain itself or its degree.[7] Indeed, two other Circuits have recently construed the pain standard as not requiring direct medical evidence of the pain or its intensity. *Polaski v. Heckler*, 751 F.2d 943 (8th Cir.1984); *Green v. Schweiker*, 749 F.2d 1066 (3rd Cir.1984). The *Green* court accurately stated:

> The new statute does not require objective medical proof of each and every element of pain; if such were the requirement, there would be no need for a separate section on evaluation of pain. The Disability Reform Act and its legislative history, as well as the Secretary's own regulations, recognize that pain must be considered, can be disabling in itself, and is often not subject to strict objective medical proof. All that the statute requires is that 'there must be medical signs and findings, established by medically acceptable techniques, which could reasonably be expected to produce the pain or other symptoms alleged.' Pub.L. 98–460, § 3(a)(1). Thus while there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself.

*Green*, 749 F.2d at 1070–71.

The record in the instant case shows that Foster suffers from an impairment that could result in the pain alleged. Foster testified that he cannot stand or sit more than thirty to forty-five minutes and cannot walk more than a block and a half because of the pain. Foster wears a back brace at all times, even when sleeping, and cannot walk without a cane. His persistent pain is eased somewhat only when he takes prescribed medication and lies down.

The medical reports of all examining physicians establish that he has an impairment (degenerative disc disease). The reports

---

5. The ALJ's decision was made prior to the enactment of the Disability Reform Act. The congressional standard, however, was a mere codification of the regulations and policies followed by the Social Security Administration. S.Rep. No. 466, 98 Cong., 2d Sess. 24 (1984). Thus, the ALJ was aware of the appropriate pain standard to be applied in the instant case, notwithstanding the congressional adoption thereof one year later.

6. The ALJ's complete disregard of Foster's subjective testimony of pain because of purportedly weak objective medical findings is alone sufficient to require reversal. *See Thorne v. Weinberger*, 530 F.2d 580, 583 (4th Cir.1976).

7. We read the Disability Reform Act standard for evaluating pain to be consistent with prior case law of this Circuit. *See, e.g., Shively v. Heckler*, 739 F.2d 987 (4th Cir.1984) (no disabling pain when the subjective testimony is the sole medical evidence of pain); *Myers*, 611 F.2d at 983 (subjective testimony of the intensity of pain coupled with medical findings of a physical impairment causing pain proved disability); *Thorne*, 530 F.2d at 583 (medical findings supported by the subjective evidence demonstrated the existence of disability).

document the existence of pain.[8] Foster's treating physician, Dr. Hayes, declared him totally disabled due to his impairment and associated pain. The medical findings included superimposed strained ligaments of the lumbar spine, spinal deformity, motion in the lumbar spine only ⅓ normal, and tenderness. The report of the North Carolina Memorial Hospital Orthopedic Clinic noted an impression of mechanical low back pain with evidence of degenerative disc disease and tenderness. The doctors' findings were based on established medical techniques, including x-rays, motion of Foster's spine, and leg motions.

■ In sum, Foster's testimony of the extent and effect of his pain, supported by the objective medical findings, meets the requirements of the pain standard in the Disability Reform Act. Indeed, we held recently that evidence similar to that in the instant case met the burden of production imposed by the Act. *Hammond v. Heckler,* 765 F.2d 424 (4th Cir.1985).

Finding that the medical evidence supports the pain alleged, we turn to the issue of the effect of that pain on Foster's residual functional capacity. The record clearly lacks the substantial evidence required to support the ALJ's and district court's finding that Foster can perform a wide range of light work. Moreover, substantial evidence to the contrary exists.

Light work requires lifting of objects that weigh up to twenty pounds. The work may include a good deal of walking, standing or sitting with some pushing and pulling of leg or arm controls. 20 C.F.R. § 404.1567(b) (1983). The medical testimony of Dr. Hayes establishes that Foster's impairment and pain preclude him from performing the activities associated with light work. Dr. Hayes found that Foster can sit, stand, or walk for only short periods of time (one to two hours). The doctor

determined that Foster cannot push, pull, bend, squat, crawl, or climb. Foster is also unable to lift objects weighing more than five to ten pounds.

■ The ALJ improperly disregarded the doctor's findings. Dr. Hayes' testimony as the treating physician is "entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Mitchell v. Schweiker,* 699 F.2d 185, 187 (4th Cir.1983). A treating physician's testimony is ignored *only* if there is persuasive contradictory evidence. *Id.* The instant record contains no contradiction to Dr. Hayes' findings. Indeed, the other examining physicians' testimony corroborated Dr. Hayes' conclusions that Foster suffers from degenerative disc disease, pain, and tenderness. Moreover, these doctors stated that the treating physician was better qualified to evaluate Foster's disability status.

■ Concluding that Foster is unable to do light work, we will consider his disability status under the next lower classification, sedentary work.[9] Applying the medical vocational guidelines to Foster's residual functional capacity to do sedentary work, age, education and work experience, he is disabled. 20 C.F.R. Ch. III, App. 2, Rule 201.17 (1983). Accordingly, we reverse the district court's judgment and remand the case with instructions that the Secretary enter a finding of disabled.

REVERSED AND REMANDED.

---

8. The impairment and pain are documented in all the reports dating back to 1978.

9. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (1983).